UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
SOUTHERN DIVISION at PIKEVILLE

CIVIL ACTION NO. 7:09-148

KENTUCKY OIL AND REFINING COMPANY, PLAINTIFF

v.  **OPINION AND ORDER**

W.E.L., INC., DEFENDANT

* * * * * * * * *

This matter came before the Court on the Motion for Preliminary Injunction (DE 12) filed by the Defendant W.E.L., Inc. The Court has reviewed the parties' briefs and conducted a hearing at which both parties were permitted to present evidence and arguments on the motion.

**I.     BACKGROUND.**

The Plaintiff Kentucky Oil and Refining Company sells petroleum products in Kentucky. The Defendant W.E.L. transports and disposes of waste. In or about February 2009, Kentucky Oil entered into an agreement with W.E.L. pursuant to which W.E.L. was to remove and dispose of waste in an above-ground storage tank located at Kentucky Oil's facility in Betsy Layne, Kentucky.

W.E.L. removed approximately three tanker trailers of waste from the storage tank and disposed of them at a disposal facility in West Virginia. The West Virginia facility refused to accept a fourth tanker trailer due to high volatility levels. Thus, W.E.L. took that trailer to a facility in Ohio better able to dispose of highly volatile sold waste. W.E.L. transported six more loads to the Ohio facility. W.E.L. filled an eleventh and final trailer-load with waste from Kentucky Oil's facility and transported the load to a disposal facility in Indiana. However, the Indiana facility rejected the 11th trailer because it had a high concentration of polychlorinated biphenyl ("PCB").

On May 29, 2009, W.E.L. returned the trailer to Kentucky Oil's property where it remains today. The trailer belongs to W.E.L.

Kentucky Oil commenced this action, asserting breach of contract and trespass claims against W.E.L. W.E.L. filed a counterclaim, asserting various state tort claims. However, it also asserts a citizens suit under the Resources Conservation Recovery Act, 42 U.S.C. § 6941 ("RCRA"), and requests injunctive relief under that act, including a preliminary injunction.

With its motion for preliminary injunction, W.E.L. asks the Court to order Kentucky Oil to empty the waste in W.E.L..'s trailer, to clean the trailer, and to permit W.E.L.. to remove the trailer from Kentucky Oil's property.

**II.     ANALYSIS.**

A court's decision on whether to grant a motion for preliminary injunction involves a balancing of the following factors: (1) the likelihood that the movant will succeed on the merits; (2) whether the movant will suffer irreparable harm if the injunction is not granted; (3) the probability that granting the injunction will cause substantial harm to others; and (4) whether the injunction advances the public interest. *Jones v. Caruso*, 569 F.3d 258, 270 (6th Cir. 2009).

Thus, to obtain a preliminary injunction, W.E.L. must establish that it has a likelihood of success on its RCRA claim.

To prevail under RCRA's citizen-suit provision, W.E.L. must establish that Kentucky Oil "has contributed or ... is contributing to the past or present handling, storage, treatment, transportation, or disposal of any solid or hazardous waste which may present an imminent and substantial endangerment to health or the environment." 42 U.S.C. § 6972(a)(1)(B).

It is likely that W.E.L. will establish that Kentucky Oil is contributing to the present storage

2

of the waste in the trailer. The trailer is parked on Kentucky Oil's property and was parked there by W.E.L. with the permission of Kentucky Oil. Kentucky Oil concedes this in its response. (DE 17 at 5). Further its president, Chris Tomlinson, submits an affidavit in which he states that he granted W.E.L. permission to park the trailer on Kentucky Oil's property after being informed that it was contaminated with PCBs.

In support of its argument that the waste stored in the W.E.L. tanker trailer is a "solid or hazardous waste" as those terms are defined by RCRA, W.E.L. cites *United States v. Union Corp.*, 259 F.Supp.2d 356 (E.D. Pa. 2003). In that case, the court determined that waste transformer oil which contained PCBs constituted "solid waste" under RCRA. *Id*. at 402. RCRA defines a "solid waste" to include any discarded material resulting from commercial operations. 42 U.S.C. § 6903(27). Kentucky Oil does not dispute that the contents of the trailer is a "solid waste." Thus, it is likely that W.E.L. will establish that the waste contained in W.E.L.'s trailer is a "solid waste."

As to whether the contents of the W.E.L. trailer "may present" an imminent and substantial endangerment to health or the environment, in *Davis v. Sun Oil Co.*, 148 F.3d 606 (6th Cir. 1998), the Sixth Circuit cited approvingly the following passage from *Dague v. City of Burlington*, 935 F.2d 1343 (2nd Cir. 1991):

> Significantly, congress used the word "may" to preface the standard of liability: "present an imminent and substantial endangerment to health or the environment". This is "expansive language", which is "intended to confer upon the courts the authority to grant affirmative equitable relief to the extent necessary to eliminate any risk posed by toxic wastes." The statute is "basically a prospective act designed to prevent improper disposal of hazardous wastes in the future." It is not specifically limited to emergency-type situations. A finding of "imminency" does not require a showing that actual harm will occur immediately so long as the risk of threatened harm is present: "An 'imminent hazard' may be declared at any point in a chain of events which may ultimately result in harm to the public." Imminence refers "to the

> nature of the threat rather than identification of the time when the endangerment initially arose." In addition, a finding that an activity may present an imminent and substantial endangerment does not require actual harm. Courts have consistently held that "endangerment" means a threatened or potential harm and does not require proof of actual harm.

*Davis*, 148 F.3d at 609-10 (quoting *Dague*, 935 F.2d at 1355-56, *rev'd on other grounds*, 505 U.S. 557(1992)).

W.E.L. argues that the waste stored in its trailer "may present an imminent and substantial endangerment to health or the environment" because the tanker trailer was not designed for long-term storage of hazardous wastes such as PCBs. (DE 12, Motion at 9). Thus, there exists a threat that all 5,560 gallons of the PCB-laden waste will be released.

The Supreme Court has recognized that PCB is a "highly toxic carcinogen." *Midatlantic Nat'l Bank v. New Jersey Dep't of Envtl. Protection*, 474 U.S. 494, 497 (1986). The production and sale of PCBs is banned, with narrow exceptions, under the Toxic Substances Control Act, 15 U.S.C. § 2605(e). The Tenth Circuit has also explained that PCBs "are extremely toxic to humans and wildlife, and pose carcinogenic and other risks to humans." *Yaffe Iron and Metal Co., Inc. v. EPA*, 774 F.2d 1008, 1010 n.1 (10th Cir. 1985). Kentucky Oil does not dispute that PCBs are an extremely toxic carcinogen or that their discharge from the tanker may present an imminent and substantial endangerment to health or the environment.

Kentucky Oil argues that W.E.L. is not likely to succeed on the merits of its claim because it has failed to show that the contents of the tanker trailer are waste from Kentucky Oil's storage tank. (DE 17 at 10). Kentucky Oil argues that it heard nothing from W.E.L. between the time when W.E.L. removed the last of the contents from the storage tank on or about May 1999 and when W.E.L. contacted Kentucky Oil in August 1999 stating that the contents were PCB-laden. Kentucky

4

Oil states it has no idea what may have been done to the tanker trailer in the interim. (DE 17 at 11).

However, W.E.L. submits the affidavit of its president William Litchford establishing the whereabouts of the trailer during the relevant time period. Further, Clinton Dudley, W.E.L. Sales and Branch Manager, testified at the hearing that the load was retrieved from Kentucky Oil and taken directly to Ohio where it tested high for PCBs upon its arrival. He testified that there was an "explosion" of some sort at the Ohio facility and, as a result, W.E.L. was not allowed on-site and could not access its tanker for about three weeks. When W.E.L. retrieved the tanker, it transported it to Indiana where it was again tested and showed PCB levels too high for most disposal facilities to accept. Dudley testified that, after the Indiana facility rejected the load, W.E.L. transported it back to Kentucky Oil.

There is simply no evidence before the Court that would indicate that the trailer at issue holds something other than the waste removed from Kentucky Oil's storage tank.

Further, for purposes of RCRA it does not matter whether the contents of the tank came from Kentucky Oil's storage tank. There is no dispute that the waste is now being stored on Kentucky Oil's property with Kentucky Oil's knowledge.

Kentucky Oil also argues that W.E.L. has not established that it is likely that the waste in the trailer is contaminated with PCBs (DE 17 at 10). Kentucky Oil points to the fact that the W.E.L. sampled the contents of Kentucky Oil's storage tank prior to removing the first load and the results showed that the contents did not contain any PCBs. However, W.E.L. attaches the results of the sampling of the last load which it obtained from the Indiana facility which indicates that the load was contaminated with PCBs. Further, W.E.L. submits the affidavit of its President William Litchford who states that W.E.L. was only able to sample the top portion of the tank and that PCBs sink to the

bottom of tanks due to their relative weight.

Kentucky Oil argues that W.E.L. has not established that it is likely that the tanker trailer is not a secure means of storing the contents. However, W.E.L. attaches the affidavit of Litchford who states that the tanker is not designed for the long-term storage of waste material and that it contains valves that may burst at low temperatures. Further, W.E.L. cites federal regulations prohibiting the accumulation of hazardous waste for more than 90 days. 40 C.F.R. § 262.34. At the hearing on this matter, Kentucky Oil President Tomlinson testified that the tanker is not fenced off and any person could have access to it. W.E.L.'s Dudley testified that the tanker is in close proximity to a road and that if another vehicle were to strike it, "it would be a catastrophic failure."

Thus, W.E.L. has established that it is likely that the solid waste in the trailer located on Kentucky Oil's property "may present" an imminent and substantial endangerment to health or the environment.

As to irreparable harm, RCRA "enhanced the courts' traditional equitable powers by authorizing the issuance of injunctions when there is but a risk of harm, a more lenient standard than the traditional requirement of threatened irreparable harm." *W.R. Grace & Co. v. EPA.*, 261 F.3d 330, 339 (3d Cir.2001) (quoting Price, 688 F.2d at 211)). The Court has determined that the tanker presents a risk of harm.

Given the risk of harm posed by the waste stored on Kentucky Oil's facility the Court finds that granting the injunction will not cause substantial harm to others and will instead advance the public interest. Kentucky Oil will have to pay for the disposal of the waste. However, pursuant to Federal Rule 65(c), the Court will require W.E.L. to give security in an amount proper to pay the costs and damages Kentucky Oil would sustain if it should be determined that it was wrongfully

6

enjoined. Further, Kentucky Oil is pursuing a breach of contract claim against W.E.L. for failing to dispose of the waste through which it can obtain compensatory damages for its performance of any work that W.E.L. was obligated to perform.

### III. CONCLUSION.

For all these reasons, the Court hereby ORDERS as follows:

1) W.E.L.'s Motion for Preliminary Injunction is GRANTED (DE 12);

2) Kentucky Oil shall, within ten days of the entry date of this order, arrange to properly and legally empty the hazardous waste currently stored in W.E.L.'s tanker trailer;

3) Kentucky Oil shall properly clean W.E.L.'s tanker trailer of any hazardous waste after such waste has been properly disposed;

4) Kentucky Oil shall make the emptied and cleaned tanker trailer available to W.E.L. for removal from Kentucky Oil's property no later than 21 days from the entry date of this order; and

5) W.E.L. shall post bond with the Court in the amount of $60,000 to secure against damages to Kentucky Oil should it be determined that Kentucky Oil was wrongfully enjoined.

Dated this 8th day of March, 2010.



Signed By:
*Karen K. Caldwell*
United States District Judge